Good morning, Your Honors. My name is Sharon Dulberg, appearing on behalf of Mahmoud Iman Mouman today. I would like to reserve two minutes for rebuttal. Your Honors, in this case, the Board of Immigration Appeals affirmed the immigration judge's decision in terms of past persecution and then added its own analysis in terms of change-cutting conditions. So I would like to focus first on the past persecution in the immigration judge's decision and then move on to the Board of Immigration Appeals' decision. In this case, Your Honors, the immigration judge's decision is not supported by substantial evidence. The immigration judge made four major errors in its decision in failing to find past persecution. First, the immigration judge required corroborating evidence, which is clear. This Court has held that corroborating evidence is not required when an applicant is credible. In this case, the immigration judge found that Mr. Mouman was credible, however, nevertheless required corroborating documentation. The second error that the immigration judge made was that she found that the fact that Mouman had family still in Bulgaria undercut his asylum case. And she – this was erroneous because, according to this Court, first, family members who are in the home country, it does not rebut a presumption of well-founded fear once past persecution is shown. Excuse me. Second, you need to look at whether the family is similarly situated in the home country, and then third, whether the family has suffered persecution. And in this case, Mouman testified that his family had suffered mistreatment in his home country. His father had been arrested and beaten because of his Turkish ethnicity, and his mother and sister were unable to find work except in the tobacco field. And the background documentation shows that Turks were relegated to the tobacco industry in an effort to expel them from the country, and that's at AR-104. The expert witness testified – his opinion discusses that. So – and also, they're not similarly situated to Mouman because Mouman was persecuted. He was mistreated in the army. He was mistreated. His business was destroyed. And so his – he's also not similarly situated to his family in that sense. The third error that the immigration judge made was that she found that his trip to Israel somehow undercut his asylum case, that he was able to return from Israel. Mouman – but Mouman provided a plausible explanation of why he was able to return from Israel and why he believes that he's not able to return now from the United States. And he explained that when he was in Israel, he was there on a government program, and the government held onto his passport, and he was allowed to return at that time. And then the fourth error that the immigration judge made is that she basically misconstrued this case. She said that service in the military is not persecution. And, of course, Mouman's case is not about service in the military. It's about the treatment he experienced while he served in the military. Mouman's undisputed, credible testimony compels the finding that he suffered past persecution based on his Turkish ethnicity. This Court has consistently held that beatings and physical harm rises to the level of persecution. Mouman suffered a lifetime of mistreatment in his home country because he is Turkish. He received death threats from the police. He suffered daily beatings over an 18-month period while he served in the military, and he also was imprisoned. And this was on account of his ethnicity. After he was released from the military, he was not able to find work. He applied to many, many positions and was turned away because he was Turkish. He was told that Turks screwed the country up, screwed up the country and should go back to Turkey. And then finally, when he was able to open up his own restaurant, his restaurant, he was beaten by the mafia and his restaurant was destroyed shortly after he opened it. He went to the police and the police did not help him. In fact, they threatened him. What happened to Mr. Mouman is enough to demonstrate past persecution based on the physical violence that was perpetrated on him. It was on account of his Turkish identity. And this court has held that circumstantial evidence is sufficient to show motive. And in this case, Mouman testified that, or his declaration, actually, he explained that when the mafia came to his restaurant, they said to him, go back to Turkey, you cannot run a business here. Then they came back a week later and they beat him up and they closed down his business, they destroyed his restaurant. And they said that he did not comply with what they requested and that if he failed to comply, he would be harmed further. Therefore, he has demonstrated past persecution on account of his Turkish ethnicity. Based on having demonstrated past persecution, he's entitled to a presumption of well-planned fear of future persecution. And the Board of Immigration Appeals determined that, well, the Board of Immigration Appeals' decision is not supported by substantial evidence. In order for the government to meet its burden to show changed country conditions, it must submit more than simply the country conditions report, State Department country conditions report. This court has consistently held that the State Department's country conditions report is not sufficient to overcome a well-planned fear of future persecution. And in this case, all the government submitted was the State Department country report. In addition, in order for the government to meet its burden, it must show how changed country conditions individually impact on this applicant. And in this case, they made no showing of how what they considered to be changed country conditions impacted Moomin's case. And the Board of Immigration Appeals is required to also do an individualized analysis, which it failed to do in this case. The State Department report that was submitted by the government relies on general statements. It does not say anything specifically about the mistreatment of Turks. It makes very general statements. It says that there were elections in 1996 and a new parliament in at this ‑‑ around the same time. It doesn't tell us who was elected. It doesn't tell us on what platform that president ran. And there is disturbing information in the record, because another INS document  at AR 232, another INS document which talks about how the various democratic parties in Bulgaria use anti‑Turk sentiments as their platforms. And then the State Department report that the Board of Immigration Appeals relied on talks about these presumably same democratic parties coming into power. So I think the record actually really demonstrates that there has not been change in country conditions. The Board of Immigration Appeals talks about how there are now generally harmonious relations between ethnic Turks and other Bulgarians. That's not enough to overcome the presumption of well‑founded fear of persecution. And also specifically, Mumin had submitted documentation that talks about his region in particular, talks about Kurdzali, which is where he's from, and a report from the forces in Kurdzali, which have formed a common front to oppose the Turks. That's at AR 193. In addition, Mumin submitted an expert witness declaration in which his expert witness explained that none of the problems which have created the anti‑Turk sentiment have been addressed in any systemic way. This record, the government in this record did not meet its burden of showing that the conditions have changed to such an extent that Mumin would not have a well‑founded fear of persecution if he were to return. Thank you, counsel. You have two minutes left. You can reserve. May it please the Court. I'm Kyle Sampson representing the Attorney General. This Court should affirm the determination of the immigration judge and the Board of Immigration Appeals denying the Petitioner asylum and withholding of deportation. The Petitioner has failed to show that no reasonable fact finder could conclude that the Petitioner is not eligible for either of those forms of relief. And that is the case for several reasons. First, substantial evidence in the record demonstrates the Petitioner did not suffer past persecution. It does demonstrate clearly that he was ‑‑ that he grew up in a repressive regime and was subject to some mistreatment and discrimination. But not that it rose to the level of past persecution. Petitioner focuses primarily, after discussing sort of the conditions and the context of this repressive regime, Petitioner relies primarily on his experiences in the military and his victimization by a mafioso. And also some experiences with police in Bulgaria. And let me just speak ‑‑ I wanted to speak to the credibility issue for a second. The immigration judge specifically found, recounted some of the allegations made by Petitioner, noted some inconsistencies, but then said, you know, I will give him the benefit of the doubt and find that he's credible. Therefore, this Court must take as true the allegations of mistreatment, and the fact that Petitioner subjectively believed they were on account of his Turkish ethnicity. But even assuming those things are true, they did not necessarily establish past persecution, and Petitioner's failed to carry his burden on that ‑‑ in that respect. Other evidence in the record, substantial evidence, supports the immigration judge's conclusion that there was no past persecution. Evidence that military service was compulsory and, therefore, being conscripted and the military was not directed at ethnic Turks. But that's not his claim. His claim is that the Turks and the Bulgarians were separated in the army and that the Turks were abused and ‑‑ Yeah. Well, he ‑‑ the evidence in the record shows that they were separated, which may or may not be discrimination, but that they were separated and that he then was subject to beatings for various reasons, because he didn't finish his task, because the military is a harsh thing. The substantial evidence in the record also shows that ‑‑ well, he testified that other Turks were subject to this beating. But he did not carry ‑‑ the Petitioner did not bear his burden of proof in showing that it was directed at ethnic Turks, that other non‑Turks in the military were not treated just as harshly. Well, that was his ‑‑ his testimony was that they were treated differently, and he's given credit for being credible. So I think you have to accept that. I think that a careful reading of the record, he's very careful to say that he was beaten and that other Turks were beaten, but with regard to his military service, I think substantial evidence would support a conclusion by the immigration judge that it was not necessarily on account of his Turkish ethnicity. Similarly ‑‑ Well, he testified that the Bulgarians were not beaten and that they were given the cushy job assignments. Now, do I think we have to accept that as credible? Well, you're right, we do, because the immigration judge found that that was credible. Even if there is past persecution established, however, that the service presented evidence to ‑‑ that rebuts the presumption of well‑founded fear of future persecution based on past persecution. Let me move to that part of the argument here. The service presented evidence of a State Department country report that discussed the country conditions in Bulgaria and clearly rebutted, by a preponderance at least, rebutted the presumption of a well‑founded fear of persecution based on past persecution, assuming that there was past persecution. Do they not have to individualize it and apply it to him, and did they do that? Judge Fletcher, that is required, that it be an individualized analysis. And, in fact, the record shows that that's what occurred here. This Court's held that State Department reports are the most appropriate and perhaps best information on political situations in foreign nations and that they need to be specific and individualized. Here, the service specifically presented an advisory opinion that it had obtained from the State Department that was an evaluation of the specific information provided in the application made by the Petitioner. And, in fact, it specifically addresses each of his concerns and the fundamental change in the country conditions that address those concerns and rebut the presumption. Specifically, in the advisory opinion, which is the cover page to the profile of country conditions, it specifically addressed four different things, that in the last two years or so from the time of the proceeding, removal proceeding is a time when ethnic Turks have had comparatively few problems in Bulgaria, that the political party to which the Petitioner testified that he joined was an active and respected party with 19 seats in Parliament and until recently had been supporting the governing coalition. Third, that the applicant left Bulgaria before, you know, all these traumatic changes in the government occasioned by the fall of the Communists and then later reforms that came along in the mid-'90s. And fourth, it specifically addressed his concern that if he returned, he would be mistreated and treated as a traitor and be subject to persecution. So the advisory opinion was specific and individualized to him. Then the country profile was annotated and clearly was directed at the specific allegations that the Petitioner made. I can go through them, but I think they are pretty clear from our briefing. I mean, the country profile addressed the change in the government, the political party to which this specific Petitioner belonged and claimed was a nexus for mistreatment, ethnic conflict in the country, the changes that had come about to try and get control of mafia and other corrupt organization groups, the institutional protections for minorities that the country had been putting in place, the religious element, the fact that he testified that he was a member of a minority religion in the country and was subject to mistreatment. The report specifically addressed that Islam now, because of these reforms since the mid-'90s, recognizes Islam as a traditional religion, that other non-traditional religions are still subject to sort of public and governmental disdain, but that Islam was not one of them. And it specifically addressed the fact that there's really no evidence or anything that would suggest that the Petitioner was subject to persecution. So there's substantial evidence in the record to support a conclusion that this service rebutted a presumption that the Petitioner had a well-founded fear of persecution. Finally, let me just conclude by saying there's substantial evidence that supports a conclusion, supported the BIA's conclusion and the immigration judge's conclusion, that the Petitioner does not presently have a well-founded fear of persecution. Bulgaria has made great strides. It's still a place that's, you know, not perfect and has its problems, but there's no substantial evidence to support, and nothing in the record compels a conclusion, that the Petitioner should be granted asylum or withholding of deportation. Specifically, well, you know, I have addressed each of the things in the context of rebutting the presumption. Just one other piece of evidence is the fact that his family remains in Bulgaria. There is testimony that they suffer economic hardship. It is true, but there's not evidence in the record that they are subject to persecution, present persecution under the new regime. Therefore, for those reasons, we would ask this Court to deny the Petitioner asylum or withholding of deportation. Thank you, counsel. Thank you, sir. Rebuttal. Just really briefly, in terms of the report that was submitted, I actually think this report is worse than what is in other cases, especially the Guatemalan cases, to talk about country conditions reports, just because, as I said before, it's so general. We don't even know the regime that came into power. They say that there was elections, but we don't even know what happened at that time. And also, just to make a point, I think Hakim is a really interesting case because it talks about how in order for an applicant to meet their burden, they need to submit more than a generalized country conditions report. And now the burden is on the government to rebut the fact that my client is eligible for asylum. And in order to rebut that presumption, they need to submit more than just a generalized country condition report. Well, you do have the cover letter, which speaks specifically to your client. The cover letter, you're saying? Sorry. Excuse me? The cover letter to the country report. Right. I mean, the cover. Page 116. Right. And the cover letter, I find to be very general also. It just says the applicant left Bulgaria shortly before the traumatic change in course that has vastly improved the governance of the country. But we still don't know what that means. We have no idea why. Well, I think we can take notice of what the government of the country is. You know, we don't operate totally blindly of governments. To pretend we don't know what the government of Bulgaria is, I think, is ridiculous. Well, I mean, I actually, from looking at the country conditions reports, am extremely concerned. You don't forget it from that, but we pick up a newspaper and read about it. Yeah, but we're looking at the time in 1998, and that's the time when the hearing was before the immigration judge. We're not looking at current country conditions at this moment. That's not what's before the court. And in 1998, the record shows that some of the parties that are very anti-Turk were coming into power. I mean, that's the BBC report that came out in February of 1998, and the expert opinion that said that there was no systemic change that was being made in the country. Thank you, counsel. The case just heard will be submitted. We'll proceed to the argument in M v. Ashcroft.
judges: B. Fletcher, Noonan, Thomas